UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80071-CIV-MARRA/SELTZER

SANDRA BELLIN, individually, as legal guardian
for her husband ARTHUR BELLIN,

       Plaintiff,

v.

LA PENSEE CONDOMINIUM ASSOCIATION,
INC., and NANCY SAN PEDRO,

       Defendants.

_____/



FILED by _____ D.C.

OCT 1 2 2005

CLARENCE MADDOX
CLERK U.S DIST. CT.
S.D. OF F.A  FT. LAUD.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Plaintiff's Motion for Preliminary Injunction (DE 20) and was referred to the undersigned pursuant to 28 U.S.C. § 636.  Having carefully reviewed the papers in support of and in opposition to said Motion and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that the Motion be DENIED.

I.    BACKGROUND

This is a Fair Housing Act ("FHA") action arising out of Plaintiff's residence at the La Pensee Condominiums in South Palm Beach, Florida.  Plaintiff has resided at La Pensee with her husband for 17 years.  See Complaint ¶ 7 (DE 1).  In 2002, Defendant San Pedro – another La Pensee resident who resides directly above Plaintiff and who is a member of La Pensee's Board of Directors – began complaining about a "urine smell" in her condominium.  See id. ¶¶ 5, 10 (DE 1).  San Pedro allegedly attributed the odor to Plaintiff's disabled husband, purportedly because of her "perception" that Plaintiff's

husband is incontinent.  See id. ¶¶ 9-10 (DE 1).[1]  According to the Complaint, San Pedro then used her position as a Board Member to "direct[] La Pensee to take action against Plaintiff[]."  Id. ¶ 11 (DE 1).

In January 2004, La Pensee filed an arbitration petition with the Florida Division of Land Sales, Condominiums, and Mobile Homes' Department of Business and Professional Regulation.  See id. ¶ 17 (DE 1).  In that arbitration petition, La Pensee alleged that Plaintiff was "causing a nuisance by 'allowing an extremely foul and objectionable odor to emanate from [her] unit.'"  Id. (DE 1).  Plaintiff contends that no provision of Florida law or La Pensee's bylaws authorized La Pensee to commence the arbitration proceeding.  See id. ¶ 18 (DE 1).  Plaintiff responded to the arbitration petition by filing a discrimination complaint with the Palm Beach County Office of Equal Opportunity on March 26, 2004. In that complaint, Plaintiff alleged that La Pensee and San Pedro were discriminating against her (and her husband) due to her husband's disabilities.  See id. ¶ 19 (DE 1).

On July 26, 2004, the Office of Equal Opportunity conducted a mediation; although neither side admitted fault, the parties were able to resolve their disputes, and they memorialized their understanding in a written agreement (attached to the Complaint as Exhibit A).  In that Agreement, Plaintiff agreed to make modifications to her condominium to prevent any urine odor from emanating therefrom.  Plaintiff also agreed to employ a cleaning person seven days per week to help remove any odors.  In return, La Pensee agreed to withdraw its arbitration petition "without prejudice to refile if La Pensee . . . and the Bellins cannot agree that the alleged nuisance has been abated."  See Complaint, Ex.

---

[1] Plaintiff denies that the odor emanated from her condominium.

A at 1 (DE 1).  The parties further agreed that, in the event the problem were not abated

and La Pensee were to refile its arbitration petition, La Pensee could "seek an award of all

attorney's fees incurred including attorney's fees incurred in th[e] arbitration."  Id. (DE 1).

Plaintiff alleges that, "[o]n August 11, 2004, despite all the items done pursuant to

the Agreement, La Pensee claimed that the odor remained and was worse then ever.

Thereafter, on August 27, 2004, [it] refilled [*sic*] its petition for arbitration."  Id. ¶¶ 25-26 (DE

1).  Plaintiff claims that La Pensee took such action "due to an animus toward persons with

disabilities" and in attempt to "pressure" Plaintiff and her husband to move to an assisted-

living facility.  See id. ¶¶ 27, 30 (DE 1); Motion at 1 (DE 20).  La Pensee then levied a

special assessment on all of its residents, including Plaintiff, to finance the legal expenses

it had incurred in connection with the arbitration proceeding.  See Motion at 2 (DE 20).

Plaintiff's portion of the special assessment totaled $1,018.56.  See id. Ex. A (DE 20).  Due

to her belief that the arbitration proceeding had been commenced for discriminatory

reasons, Plaintiff refused to pay the special assessment.  See id. at 2 (DE 20).  La Pensee

then threatened legal action against Plaintiff if the special assessment remained unpaid.

Plaintiff, however, persisted in her refusal to pay the special assessment.

In the meantime, on January 28, 2005, Plaintiff commenced the instant action.

Plaintiff alleges in her Complaint that Defendants' actions "in attempting to impose

conditions on [Plaintiff and her husband] residing in their apartment because of Arthur

Bellin's perceived disability is discriminatory and unlawful" under the FHA and the Florida

Fair Housing Act.  Complaint ¶ 39 (DE 1).  Plaintiff further alleges that La Pensee

discriminated against her by "fail[ing] to modify its policies to accommodate the disability

of Arthur Bellin's [*sic*]" and "fail[ing] to accept the reasonable accommodations proposed

and implemented by [Plaintiff] to address Arthur Bellin's perceived disability." Id. ¶¶ 40-41 (DE 1). Plaintiff further alleges that Defendants' actions were intended to harass her and interfere with her rights under the federal and Florida Fair Housing Acts. See id. ¶¶ 46-47 (DE 1). As a result of Defendants' actions, Plaintiff alleges that she and her husband have suffered severe emotional distress; she seeks damages as well as injunctive relief prohibiting Defendants from discriminating against her in the future.

On March 29, 2005, La Pensee filed a lien against Plaintiff's condominium as a result of her continued failure to pay the special assessment. See Motion Ex. D (DE 20). And, on July 13, 2005, La Pensee commenced a foreclosure action in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida (the "Foreclosure Action"), seeking to foreclose the lien on Plaintiff's condominium. See id. Ex. F (DE 20).

On August 9, 2005, Plaintiff filed the instant Motion. In her Motion, Plaintiff seeks two types of injunctive relief. First, she purports to seek a mandatory injunction ordering the state court to dismiss the Foreclosure Action. See Motion at 8 (DE 20) ("Wherefore, Plaintiff[] . . . demands that this court issue a preliminary injunction: (I) ordering the Circuit Court in and for Palm Beach County, Florida, to dismiss the foreclosure action . . . ."). At several places in her Motion, however, Plaintiff appears to assert that, in actuality, she seeks an order enjoining La Pensee from proceeding with the Foreclosure Action, rather than an order commanding the state court to dismiss that action. See, e.g., id. at 4 (DE 20) (arguing that "[e]njoining La Pensee from proceeding in state court" would not run afoul of Anti-Injunction Act); id. at 6 (DE 20) ("If La Pensee is not enjoined from prosecuting the [F]oreclosure [A]ction . . ., [Plaintiff] will be forced to assert counterclaims duplicative of the action before this court . . . ."). Plaintiff argues that enjoining the Foreclosure Action is

appropriate because this Court would be "divest[ed] of jurisdiction to provide the injuncti[ve] . . . relief" Plaintiff seeks in her Complaint if the Foreclosure Action were to result in a judgment for La Pensee and Plaintiff were dispossessed of the condominium. See id. at 3 (DE 20). Second, Plaintiff requests that La Pensee be enjoined from levying special assessments against her in the future (or commencing any action against her as a result thereof) for legal fees incurred in connection with the instant matter. See id. at 8 (DE 20).

By Order dated August 31, 2005 (DE 27), the District Court referred Plaintiff's Motion to the undersigned. Upon reviewing the Motion, the undersigned noted the possibility that the requested injunction would be barred by the Anti-Injunction Act, 28 U.S.C. § 2283. As a result, the undersigned issued an Order (DE 32) on September 9, 2005, requiring the parties to submit supplemental memoranda addressing the applicability of the Anti-Injunction Act to Plaintiff's Motion. Plaintiff has now submitted her memorandum (DE 33) and La Pensee has submitted a response thereto (DE 35); Plaintiff apparently has opted not to file a reply. The Motion is therefore ripe for review.

II.    DISCUSSION

As set forth above, Plaintiff's seeks two different types of injunctive relief in her Motion. First, Plaintiff seeks an order enjoining La Pensee from proceeding with the Foreclosure Action.[2] Second, Plaintiff seeks an order enjoining La Pensee from levying

_____

[2] Although the final paragraph of Plaintiff's Motion suggests that Plaintiff seeks an order commanding the state court to dismiss the Foreclosure Action (rather than enjoining that action), the undersigned concludes that when read together, Plaintiff's Motion papers suggest that Plaintiff actually seeks an order enjoining the Foreclosure Action. See, e.g., Plaintiff's Response to Court's Order of September 9, 2005 at 1 (DE 33) ("Plaintiff[ is] respectfully requesting that the pending state court suit be enjoined by this [C]ourt . . . ."). However, even if Plaintiff were, in fact, seeking an order directing the state court to dismiss the Foreclosure Action, Plaintiff would not be entitled to relief because federal courts lack

special assessments against her in the future (or commencing any action against her as a result thereof) for legal fees incurred in connection with the instant matter. <u>See</u> Motion at 8 (DE 20). For the reasons discussed below, neither type of relief is warranted.

A.    <u>The Court Cannot Enjoin the Foreclosure Action</u>

Pursuant to the All Writs Act, federal courts are empowered to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Included within that power is the authority to issue orders enjoining state court proceedings. The broad authority granted to the federal courts by the All Writs Act, however, is circumscribed by the Anti-Injunction Act, 28 U.S.C. § 2283. That Act provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Act creates an "absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of [the] three specifically defined exceptions." <u>Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 286 (1970). When read together, "the All Writs Act and the Anti-Injunction Act govern whether a district court can properly enjoin state court litigation pending at the time injunctive relief

---

jurisdiction to compel state courts to take specified actions. <u>See</u>, <u>e.g.</u>, <u>Mother & Father v. Cassidy</u>, 338 F.3d 704, 711 (7th Cir. 2003) ("[I]t seems to us that a federal court's issuance of a directive to a state court would be an affront to basic principles of comity.") (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1040 (1983)); <u>Demos v. United States Dist. Court for E. Dist. of Wash.</u>, 925 F.2d 1160, 1161-62 (9th Cir. 1991) (noting that court lacked jurisdiction over plaintiff's attempts "to obtain a writ in this court to compel a state court to take . . . some action"); <u>Davis v. Lansing</u>, 851 F.2d 72, 74 (2d Cir. 1988) ("The federal courts have no general power to compel action by state officials."); <u>St. George v. Blaine</u>, No. Civ. A. 00-1716, 2002 WL 32350550, at *2 (E.D. Pa. Feb. 27, 2002) ("As a federal court, . . . we lack the authority to . . . force the state courts to act . . . .").

is requested." Newby v. Enron Corp., 338 F.3d 467, 474 (5th Cir. 2003).

In her Motion, Plaintiff had suggested (but had fallen short of specifically arguing) that an injunction enjoining the Foreclosure Action would fall within the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act. See Motion at 3-4 (DE 20) (asserting that "La Pensee's attempt to foreclose . . . is also an attempt to divest this court of its jurisdiction to provide the injuncti[ve] and declaratory relief as demanded"). However, when the undersigned directed Plaintiff to specifically address the applicability of the Anti-Injunction Act to her Motion, she appeared[3] to concede that the "in aid of jurisdiction exception" does not apply.

The undersigned concurs that the "in aid of jurisdiction" exception does not apply in this case. Assuming, *arguendo*, that an injunction were not granted and the state court were to permit foreclosure of La Pensee's lien, this Court would not be divested of jurisdiction over this matter; indeed, the Court would still have the power to adjudicate Plaintiff's claim that La Pensee had engaged in discrimination in violation of the Fair Housing Act. Rather, by being dispossessed of her residence, Plaintiff would merely lose an available remedy: prospective injunctive relief enjoining La Pensee's future discrimination against her. Stated differently, the foreclosure of La Pensee's lien would not "so interfere" with this action that it would "impair the . . . court's . . . authority to decide [this] case." Atl. Coast Line R.R. Co., 398 U.S. at 286; see also Phillips v. Chas. Schreiner Bank, 894 F.2d 127, 132 (5th Cir. 1990) (reversing district court order enjoining state court

---

[3] It only "appears" that Plaintiff so conceded because the "concession" is amorphously written. See Response to Court's Order of September 9, 2005 at 4 (DE 33) ("The proceeding of the state court matter is not barred by the 'when necessary in aid of' provision of the Anti-Injunction Act.").

foreclosure action; district court's jurisdiction over RICO claim concerning real properties at issue in foreclosure action was "not threatened by the possibility that the state court might allow [the defendant] to foreclose on the properties").

Recognizing the inapplicability of the "in aid of jurisdiction" exception, Plaintiff has raised a new argument in her supplemental memorandum: she now argues that an injunction enjoining the Foreclosure Action would fall within the "expressly authorized by Act of Congress" exception to the Anti-Injunction Act. See Response to Court's Order of September 9, 2005 at 2-3 (DE 33). In support of this argument, however, Plaintiff does little more than cite the case law interpreting whether the Fair Housing Act falls within the "expressly authorized" exception; she makes no effort to explain why she believes that the exception should apply.[4] And, upon reviewing the case law, the undersigned concludes that this exception does not apply.

In Mitchum v. Foster, 407 U.S. 225 (1972), the Supreme Court articulated a two-part test for determining whether a federal statute comes within the Anti-Injunction Act's "expressly authorized" exception. First, the federal statute must have "created a specific and uniquely federal right or remedy, enforceable in a federal court of equity." Id. at 237. Second, the federal right or remedy must be such that it can be "given its intended scope

---

[4] Plaintiff does argue that she might not be permitted to assert her FHA rights in the Foreclosure Action. See Response to Court's Order of September 9, 2005 at 4 (DE 33). Plaintiff bases this argument, however, on the limitations imposed by Florida state courts on claims under the Florida Fair Housing Act. See id. (DE 33). There is no reason for the Court to assume that the same limitations would be placed on rights asserted under the FHA. See, e.g., Johnson v. Mississippi, 421 U.S. 213, 219-20 (1975) (noting that it is "to be expected that the protection of federal . . . statutory rights c[an] be effected in . . . state proceedings"); Bettencourt v. Bd. of Registration in Med. of Com. of Mass., 904 F.2d 772, 776 (1st Cir. 1990) ("Underlying our federal system is a presumption that the state courts are . . . capable . . . of guaranteeing federal rights.").

only by the stay of a state court proceeding." Id. at 238 (emphasis added).[5]

The only federal court to have discussed in depth whether the FHA satisfies the Mitchum test is United States Court of Appeals for the First Circuit, which concluded that it does not. See Casa Marie, Inc. v. Superior Court of P.R., 988 F.2d 252 (1st Cir. 1993).[6] The Casa Marie court recognized that the second prong of the Mitchum test "seem[s] to require some indication that Congress suspected that state courts, as a routine practice, would not vindicate [FHA] rights." Id. at 261. The court then noted that the FHA confers concurrent jurisdiction over FHA claims on state and federal courts, see 42 U.S.C. § 3613(a)(1)(A), which "would seem to imply a vote of confidence in the integrity and competence of state courts to adjudicate [FHA] claims." 988 F.2d at 262. Given this fact and the absence of any legislative history suggesting that Congress did not trust the state courts to vindicate FHA rights, the court concluded that the FHA did not satisfy the second prong of the Mitchum test. Id. at 262; cf. Mitchum, 407 U.S. at 240-41 (finding that 42 U.S.C. § 1983 fell within "expressly authorized" exception to Anti-Injunction Act because legislative history demonstrated distrust of state courts, which were often "in league with those who were bent upon abrogation of federally protected rights"). The undersigned finds the reasoning in Casa Marie persuasive. See also Pieczenik v. TIAA-CREF, No. 05 Civ. 2193, 2005 WL 637942, at *1 (S.D.N.Y. Mar. 18, 2005) (adopting reasoning in Casa

_____

[5] The fact that the FHA – or any federal statute – fails to expressly mention the Anti-Injunction Act or refer to enjoining state court proceedings is not dispositive of whether the "expressly authorized" exception applies. See Mitchum, 407 U.S. at 237. Nor does the fact that the FHA authorizes injunctive relief mean that the statute necessarily falls within the "expressly authorized" exception. See Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 636-37 (1977).

[6] Then-Circuit Judge Stephen Breyer was on the panel that decided Casa Marie.

Marie); Pathways, Inc. v. Dunne, 172 F. Supp. 2d 357, 362-63 (D. Conn. 2001), affirmed in part and vacated in part on other grounds, 329 F.3d 108 (2d Cir. 2003) (same). Accordingly, the undersigned concludes that the "expressly authorized" exception to the Anti-Injunction Act does not apply in this case.[7]

The final exception to the Anti-Injunction Act applies where an injunction is necessary in order for a federal court to protect or effectuate its judgments. 28 U.S.C. § 2283. That exception, however, is limited to situations where a federal court has issued a judgment or order that may be threatened by an inconsistent judgment or order issued by a state court. See, e.g., Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147-48 (1988) (noting that "an essential prerequisite" for applying this exception to Anti-Injunction Act is that "the claims or issues that the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court"). No such judgment or order has been issued by the Court in this case; this exception therefore does not apply.[8]

Without prejudging the merits of Plaintiff's case, the undersigned recognizes that Plaintiff may be entitled to some relief on her claims. And Plaintiff is, of course, free to raise her FHA discrimination claims before the state court in the Foreclosure Action. But

_____

[7] Plaintiff directs the Court's attention to Advocacy Center for Persons with Disabilities Inc. v. Woodlands Estates Ass'n, Inc., 192 F. Supp. 2d 1344 (M.D. Fla. 2002), and Martin v. Constance, 843 F. Supp. 1321 (E.D. Mo. 1994); in each of those FHA cases, the court enjoined state court proceedings. Neither of those cases is persuasive, however. In Woodlands Estates, the court issued an injunction without any mention of whether such injunction might be barred by the Anti-Injunction Act; it appears that the issue had not been raised either by the court or by the parties. In Martin, the court noted the Casa Marie decision in a footnote, yet without analysis concluded that Casa Marie was unpersuasive and that the FHA satisfies the Mitchum test. See Martin, 843 F. Supp. at 1324 n.1.

[8] Indeed, Plaintiff does not argue that this exception should apply here.

"a federal court does not have inherent power to ignore the limitations of [the Anti-Injunction Act] and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right . . ., even when the interference is unmistakably clear." Atl. Coast Line R.R. Co., 398 U.S. at 294.[9]  Because an injunction enjoining the Foreclosure Action would not fall within any of the Anti-Injunction Act's three specified exceptions, and because the Act creates an "absolute prohibition against enjoining state court proceedings" unless the injunction falls within one of those exceptions, id. at 286, the Court is without power to enjoin the Foreclosure Action.

B.      An Injunction Enjoining Future Assessments Would be Inappropriate

As discussed above, in addition to seeking an injunction enjoining the Foreclosure Action, Plaintiff also seeks an preliminary injunction enjoining La Pensee "from assessing and trying to collect (through any future state court proceedings) the Association's legal fees and expenses that relate to this discrimination complaint." See Response to Court's Order of September 9, 2005 at 8 (DE 33).  Although the Anti-Injunction Act does not bar the Court from enjoining the initiation of future state-court proceedings by La Pensee, see Dombrowsky v. Pfister, 380 U.S. 479, 484 n.2 (1965), the undersigned nevertheless concludes that Plaintiff is not entitled to such relief.

1.      The requested injunction is too attenuated from Plaintiff's claims

Because a preliminary injunction is "an extraordinary and drastic remedy," Mazurek

_____

[9] Just as an injunction directing the state court not to proceed with the Foreclosure Action would violate the Anti-Injunction Act, so too would an injunction directing La Pensee not to proceed.  See Atl. Coast Line R.R. Co., 398 U.S. at 287 ("It is settled that the prohibition of [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties . . . .").

v. Armstrong, 520 U.S. 968, 972 (1997) (*per curiam*), the Court must carefully scrutinize

any request for such injunctive relief.  Indeed, almost 160 years ago the Supreme Court

stated:

> There is no power, the exercise of which is more delicate, which requires
> greater caution, deliberation, and sound discretion, or more dangerous in a
> doubtful case, than the issuing [of] an injunction.  It is the strong arm of
> equity, that never ought to be extended, unless to cases of great injury,
> where courts of law cannot afford an adequate and commensurate remedy
> in damages.  The right must be clear, the injury impending, and threatened
> so as to be averted only by the protecting preventive process of injunction.

Truly v. Wanzer, 46 U.S. (5 How.) 141, 142-43 (1847) (citation omitted).  Fundamental to

the issuance of a preliminary injunction is the principle that injunctive relief "must be framed

to remedy the harm claimed by the party."  Aviation Consumer Action Project v. Washburn,

535 F.2d 101, 108 (D.C. Cir. 1976) (citing Hartford-Empire Co. v. United States, 323 U.S.

386, 410 (1945).  Because a preliminary injunction must be tailored to remedy the specific

harm shown, it cannot "address matters which in no circumstances can be dealt with in any

final injunction that may be entered."  In re Microsoft Corp. Antitrust Litig., 333 F.3d 517,

525 (4th Cir. 2003) (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212,

220 (1945)).  The injunction Plaintiff seeks here runs afoul of these principles.

Plaintiff's claims in this case concern La Pensee's alleged discrimination against her

and her husband on account of her husband's perceived disability:  she alleges that La

Pensee has "fail[ed] to modify its policies to accommodate the disability of Arthur Bellin's

[*sic*]" and "fail[ed] to accept the *reasonable accommodations* proposed and implemented

by [Plaintiff] to address Arthur Bellin's perceived disability."  Complaint ¶¶ 40-41 (DE 1).

Plaintiff asserts that as a result of this discrimination, she is entitled to a preliminary

injunction enjoining La Pensee from levying future special assessments on her to pay La

Pensee's legal fees incurred in connection with this action.  Yet, there does not exist a sufficient nexus between the preliminary injunction Plaintiff seeks (to enjoin assessments for legal fees) and the discrimination Plaintiff alleges in the Complaint, because Plaintiff's obligation to pay special assessments is wholly separate and distinct from the alleged discrimination; that obligation arises under La Pensee's bylaws and condominium declaration.  See Condominium Declaration ¶¶ XV(A-D) (attached to Ex. F to Plaintiff's Motion (DE 20)).  And while Plaintiff alleges that the fees underlying such assessment(s) have been incurred (or will be incurred) for discriminatory purposes, those (allegedly) unlawful purposes do not absolve Plaintiff of her (wholly unrelated) obligation to pay any such special assessment, at least until such time as a finding of discrimination underlying La Pensee's legal actions has been made.

Notably, Plaintiff has not alleged – nor can she, based on the current record – that the assessment was discriminatorily imposed on her and not other La Pensee residents. And while Plaintiff does allege that the assessment was levied to "interfere" with the exercise of her FHA rights, see Response to Court's Order of September 9, 2005 at 5-6 (DE 33), there is no evidence in the record to support that assertion other than the levy itself.  Plaintiff cites a Department of Housing and Urban Development administrative decision, HUD v. Ocean Sands, Inc., for the proposition that the levy, standing alone, can constitute retaliation and/or interference with Plaintiff's FHA rights.  (The initial Ocean Sands decision is attached to Plaintiff's Motion as Ex. G; the decision on appeal is attached to Plaintiff's Motion as Ex. H.)  Ocean Sands is clearly distinguishable, however. There, a finding of discrimination had already been made when it was decided that assessing the resident for a portion of the attorneys' fees expended by the condominium

13

association in connection with the matter would violate the FHA.  Here, however, no such finding of discrimination has been made.  In essence, Plaintiff puts the proverbial "cart before the horse" – she cannot claim that the assessment itself violates the FHA until there has been a finding of discrimination underlying the litigation for which the assessment was levied.[10]

Plaintiff's argument is similar to that often raised by tax protesters, who typically refuse to pay taxes because they disagree with the ways in which their tax dollars are spent by the government.  Any alleged impropriety regarding the manner in which tax dollars are spent, however, cannot insulate a taxpayer from the legal obligation to pay taxes.  Indeed, were taxpayers permitted to object to paying taxes on the ground that certain government uses of their tax dollars were immoral or illegal, the tax system – and the federal government that relies on it – would grind to a halt.  See, e.g., United States v. Lee, 455 U.S. 252, 260 (1982) ("If, for example, a religious adherent believes war is a sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a . . . claim to be exempt from paying that percentage of the income tax.  The tax system could not function if [taxpayers] were allowed to challenge the tax system because tax payments were spent in a manner that

_____

[10] Taken to its logical conclusion, Plaintiff's argument would mean that a condominium association would rarely be able to defend itself in legal proceedings against one (or more) of its residents.  If a condominium resident (or group of residents) decided not to pay a special assessment for legal fees solely based on the assertion that the assessment had been levied for an allegedly discriminatory purpose (as opposed to having been levied in a discriminatory fashion against only certain residents), then the condominium association would not be able to muster the fees necessary to defend itself in the action challenging the levy.  In essence, the residents would be victorious even before the action made its way to court, because they could preclude the condominium association from effectively defending itself.

14

violates their religious beliefs."). So, too, would La Pensee lose the ability to properly function if its residents were permitted to refuse to pay duly authorized special assessments for legal fees because of their disagreements with La Pensee's policies.

As La Pensee correctly notes in its Response to Plaintiff's Motion, this is precisely why Florida law often permits a condominium resident to recover the amounts levied by her condominium association to pay for legal fees incurred in an action against her if she is victorious in a later lawsuit against the association. See Response at 3-4 (DE 22) (citing Fla. Stat. § 718.303(1)) ("A unit owner prevailing in an action between the Association and a unit owner . . . may recover additional amounts as determined by the Court to be necessary to reimburse the unit owner for his or her share of assessments levied by the Association to fund its expense of the litigation."). In other words, the Florida legislature contemplated precisely the situation present here: that a condominium resident might be required to partially fund a condominium association in litigation against the resident. While this may seem unfair on its surface, see Motion at 3 (DE 20) ("There is something inherently inequitable about forcing the victims of housing discrimination to be responsible for funding their opponents during the pend[e]ncy of litigation."), upon closer examination it becomes apparent that fulfilling one's obligation to pay a special assessment (or tax) is essential to the orderly operation of the governing body that imposes that assessment (tax). Plaintiff's recourse for her grievance is simple: like a tax protester, she may avail herself of the appropriate avenues for redress – the legislature and/or the courts – rather than unilaterally opting not to pay the assessment (tax). And, if her position should prevail (in court), she will recoup the amounts she expended on the assessment.

Simply put, Plaintiff cannot use her disagreement with La Pensee's actions

15

(concerning her husband's disability) as a shield to avoid her independent legal obligation to pay special assessments authorized in accordance with La Pensee's by-laws. The relief Plaintiff seeks (enjoining future special assessments for legal fees) would not remedy the harm Plaintiff claims (discrimination/retaliation in violation of the FHA); enjoining La Pensee from levying special assessments for legal fees in the future would not prevent it from "failing to modify its policies to accommodate the disability of Arthur Bellin's [sic]" or "failing to accept the reasonable accommodations proposed and implemented by [Plaintiff] to address Arthur Bellin's perceived disability." Complaint ¶¶ 40-41 (DE 1). Rather, such an injunction would simply prevent La Pensee from being able to defend itself against Plaintiff's claims, whether meritorious or not. Under these facts, Plaintiff is not entitled to preliminary injunctive relief.

2.    Plaintiff has failed to show the irreparable harm necessary to support a preliminary injunction.

A second, independent reason exists for denying the requested injunctive relief: Plaintiff has failed to demonstrate that she will be irreparably harmed absent an injunction. It is well established that a party seeking a preliminary injunction must show a substantial likelihood that it will suffer immediate irreparable harm if an injunction were not granted. See, e.g., Siegel v. LePore, 234 F.3d 1163, 1178 (11th Cir. 2000).[11] Plaintiff has not made

---

[11] Some courts have held that where a federal statute, such as the FHA, expressly authorizes injunctive relief for violations thereof, no showing of irreparable harm is necessary. See, e.g., Ill. Bell Tel. Co. v. Ill. Commerce Comm'n, 740 F.2d 566, 571 (7th Cir. 1984) ("where the plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, it need not show irreparable harm"); Epicenter of Steubenville, Inc. v. City of Steubenville, 924 F. Supp. 845, 852 (S.D. Ohio 1996) (the FHA "specifically provides that equitable relief is available when there is a violation of the statute, so the traditional showing of irreparable harm is not required") (internal quotation marks and citations omitted); Assisted Living Assocs. of Moorestown,

16

such a showing here, for two reasons.

First, it is unknown whether La Pensee will levy any future special assessments for legal fees related to this litigation (or the Foreclosure Action) and, even if La Pensee were to do so, Plaintiff would not suffer irreparable harm as a result; indeed, no harm whatsoever would result from any such levies themselves.  Rather, Plaintiff would suffer irreparable harm if – and only if – she were not to pay such levies and La Pensee were to obtain a lien and commence foreclosure proceedings against her as a result and La Pensee were successful in foreclosing that lien.  At this stage of the proceedings, it is unclear whether La Pensee would take such action (although its conduct to date suggests that it might), and there certainly exists no basis for the Court to conclude that La Pensee would necessarily prevail in such a foreclosure action.  The possibility that this potential for irreparable harm looms in the indefinite future is insufficient to support a preliminary injunction.  See, e.g., Connecticut v. Massachusetts, 282 U.S. 660, 673 (1931) ("Injunction

LLC v. Moorestown Twp., 996 F. Supp. 409, 438-39 (D.N.J. 1998) (collecting cases so holding).  The Supreme Court, however, has indicated that courts are not "mechanically obligated to grant an injunction for every violation of the law."  Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) (Clean Water Act did not require a district court to grant injunction for any violation thereof, but rather court should "order the relief it considers necessary to secure prompt compliance with the Act"); accord Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 541-43 (1987).  For this reason, where (as here) a federal statute merely authorizes – but does not mandate – injunctive relief for violations thereof, there exists "no reason to cast off those principles that have traditionally informed the exercise of a court's broad equity powers."  Natural Resources Defense Council v. Texaco Refining & Marketing, Inc., 906 F.2d 934, 940 n.6 (3rd Cir. 1990).  Consistent with this reasoning, the Eleventh Circuit has held in FHA cases that irreparable harm may be presumed upon proof of a violation of the statute, but that the presumption may be rebutted.  See, e.g., Rogers v. Windmill Pointe Village Club Ass'n, Inc., 967 F.2d 525, 528 (11th Cir. 1992); Gresham v. Windrush Partners, Ltd., 730 F.2d 1417, 1423 (11th Cir. 1984).  Assuming, arguendo, that Plaintiff can demonstrate a likelihood of success on the merits here, the undersigned concludes that any presumption of irreparable harm arising therefrom has been rebutted, for the reasons set forth below.

will not issue in the absence of actual or presently threatened interference."); Siegel, 234 F.3d at 1176-77 ("As we have emphasized on many occasions, the asserted irreparable injury must be neither remote nor speculative, but actual and imminent.") (internal quotation marks and citations omitted).

Moreover, it is well settled that avoidable harm is not irreparable harm; if Plaintiff can mitigate the threatened "irreparable harm," she cannot refuse to do so and yet still claim that she would be irreparably injured absent an injunction. See, e.g., Barton v. Dist. of Columbia, 131 F. Supp. 2d 236, 247 (D.D.C. 2001) ("[a] preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted") (alteration in original); Air Transp. Int'l LLC v. Aerolease Fin. Group, Inc., 993 F. Supp. 118, 123 (D. Conn. 1998) ("Even if [the plaintiff] could demonstrate that it would be irreparably harmed, it must also show that it could not prevent such harm."); see also Am. Brands, Inc. v. Playgirl, Inc., 498 F.2d 947, 950 (2d Cir. 1974) (affirming district court's denial of preliminary injunction to plaintiff seeking to compel defendant to publish plaintiff's ad in its magazine because, *inter alia*, plaintiff failed to show other, similar advertising space was unavailable).  Here, Plaintiff alleges that she will be irreparably harmed if La Pensee is permitted to foreclose on her condominium and she is ousted therefrom, yet Plaintiff can take a simple step to avoid such an outcome:  she can pay the assessments levied by La Pensee.

Plaintiff has nowhere alleged – let alone proffered evidence tending to show – that she is unable to pay the currently outstanding assessments or any other assessments that

may be levied in the future.[12]  Indeed, the record reflects that Plaintiff recently paid a special assessment for concrete totaling $2,028.63, nearly twice the amount of the assessment at issue in the Foreclosure Action and similar in amount to the most recent assessment for legal fees ($2,547.40).  See Ex. D to Motion (DE 20); Ex. A to Reply (DE 29).  Plaintiff also undertook substantial repairs to her condominium, "at great expense," to attempt to appease La Pensee.  See Affidavit of Sandra Bellin ¶ 13 (Ex. B to Reply  (DE 29)).  These facts belie any suggestion that Plaintiff may be unable to pay special assessments for legal fees.  And, if Plaintiff ultimately prevails in this action, she will be able to recover any special assessment payments she might be required to make to La Pensee in order to prevent foreclosure.  These facts render preliminary injunctive relief improper.  See, e.g., Papaliolios v. Durning, 167 F.2d 737 (2d Cir. 1948) (affirming order denying preliminary injunction in declaratory judgment action concerning fine imposed on steamship because "the plaintiff can obtain clearance by paying the fine under protest and can then recover it by suit, if the fine was illegally imposed"); CMRK, Inc. v. Mooney, 193 F. Supp. 2d 286, 289-90 (D. Mass. 2001) (denying preliminary injunction seeking to enjoin defendant from refusing to sell clothes to plaintiff because plaintiff was able to purchase substitute clothes elsewhere and could subsequently recover any additional amounts paid); Ivy Broadcasting Co. v. Am. Tel. & Tel. Co., 234 F. Supp. 4, 7 (N.D.N.Y. 1964) (denying preliminary injunction seeking to enjoin disconnection of telephone service where plaintiff

_____

[12] Plaintiff does state in her Reply that she and her husband "are surviving on their limited retirement income," Reply at 2 (DE 29), but she proffers no evidence regarding that income or any other evidence concerning her financial status, despite having submitted an Affidavit in support of her Motion.  It is, of course, Plaintiff's burden to demonstrate that she would suffer irreparable harm absent injunctive relief.  See Siegel, 234 F.3d at 1176.

alleged it was being overcharged by defendant; "There is no showing that even if an over-payment is made, that [the plaintiff] will be unable to recover any resultant damages. There is no claim that the defendant telephone company is not financially able to satisfy any claimed liability to the plaintiff.  The plaintiff has failed to establish that it will suffer irreparable injury.").

III.   CONCLUSION

The undersigned concludes that the Court cannot enjoin the Foreclosure Action because no exception to the Anti-Injunction Act applies in this case.  The undersigned further concludes that Plaintiff is not entitled to an injunction enjoining La Pensee from levying special assessments for legal fees in the future because the requested relief is too attenuated from Plaintiff's claims of discrimination and because Plaintiff has failed to satisfy her burden of showing that she will suffer immediate irreparable injury absent an injunction. Accordingly, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Preliminary Injunction (DE 20) be DENIED in its entirety.

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Kenneth A. Marra, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson,

885 F.2d 790, 794 (11th Cir. 1989).

      DONE AND SUBMITTED at Fort Lauderdale, Florida, this ___ day of October 2005.

 

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

Honorable Kenneth A. Marra
United States District Judge

Matthew W. Dietz, Esq.
Law Offices of Matthew W. Dietz, P.L.
999 Ponce de Leon Boulevard, Suite 735
Coral Gables, FL 33134

Guy M. Shir, Esq.
Brian A. Kahan, Esq.
Kahan, Shir & Associates, P.L.
1800 NW Corporate Boulevard, Suite 102
Boca Raton, FL 33431-7336

R. Wade Adams, Esq.
Joel Lumer, Esq.
Adams & Adams LLP
9th Floor – Justice Building
155 South Miami Avenue
Miami, FL 33130